## Powell v. Dawkins

*Patrick W. Liddle,* for plaintiff.
*Steven R. Waxman,* for defendant.

FORER, *J.,* April 15, 1987—This is an action by Ralph B. Powell Jr., Ltd., a professional corporation of lawyers, to enforce two judgment notes against Kemel G. Dawkins and Doris M. Dawkins, his wife,

in the sum of $28,000 and $7,193.66. These sums represent legal fees owed to plaintiff by Kem-Her Inc., a construction company. Defendants are officers of this closely held corporation.

Dawkins, a native of Jamaica, was in the construction business. He took a course in construction law recommended by a small business association that was given by Powell. Thereafter, Kem-Her retained plaintiff commencing in 1977. Kem-Her has paid plaintiff approximately $30,000 in legal fees. In early 1984 when Kem-Her owed plaintiff approximately $16,000, plaintiff wrote to Kem-Her stating in pertinent part:

"Confirming our conversation of July 23, and in furtherance of my letter of July 5, 1984, 'this will confirm that this office will provide no further services to Kem-Her Construction Company Inc. in any of the matters presently facing Kem-Her as of this date.'"

The letter concluded:

"Since I believe my withdrawal of representation will likely have extremely serious consequences for you, your wife and the corporation, I will refrain from doing so for ten (10) days from the date of this letter. However, I will undertake no further activities on your behalf and, should neither of the above payment and assurance conditions be met, I will have no choice but to petition the court to permit my withdrawal."

At a conference in plaintiff's offices at which both defendants were present pursuant to plaintiff's instructions, both Mr. & Mrs. Dawkins signed the two documents on which suit is brought. Plaintiff's exhibit 6 is a personal judgment note for $28,000, representing the approximate amount then due and owing in legal fees. Plaintiff's exhibit 7 is a document captioned "Personal Acknowledgment and

Personal Assumption of Debt."

It is admitted that at the time defendants signed these documents they were not personally liable for plaintiff's legal fees that were owed by Kem-Her Inc. Plaintiff claims that it was not representing defendants and had not represented them at any time. Plaintiff also contends that the consideration for both documents was plaintiff's agreement to continue representing Kem-Her Inc.

Plaintiff carefully structured the meeting at which the documents were executed. A paralegal/notary was present.[1] She made a memorandum of the conversations indicating that Powell explained to defendants that plaintiff would have the right to execute on their home and other property. Defendants deny that this was told to them.

Prior to this meeting, Mr. Dawkins had discussed with Powell, Kem-Her's need for working capital in order to obtain a bond as a condition of getting more government contracts. Dawkins apparently told Powell that he would mortgage three small rental properties in order to raise the funds. Before Dawkins could place the mortgages, plaintiff filed attorney's liens against all three properties. This occurred shortly after Dawkins had borrowed $8,000 to make a part payment on plaintiff's outstanding bill. This action prevented Dawkins from getting the bond and precipitated the financial debacle of Kem-Her.

If, as appears to be the case, plaintiff did not represent Dawkins personally, then plaintiff had no right to file an attorney's lien against Dawkin's property. Plaintiff's rights were limited to collecting

---

1. Plaintiff claims she was present throughout the entire meeting. Defendants testified that she was called in after the meeting began.

from Kem-Her Inc.

At the August 2, 1984, conference at which both documents in question were executed, it is evident that defendants considered Powell to be their attorney. They signed the documents, as they testified, because they trusted him and because, in view of plaintiff's letter of July 24, 1984, they believed that it was essential that Kem-Her continue to be represented by plaintiff.

Powell testified that at the August 2, 1984, meeting, he was not acting as defendants' counsel. However, he did not advise them that they should consult their own attorney before signing documents of such drastic import. Whether or not Powell did inform defendants of the consequences of executing these documents, it is clear to this court, that defendants were coerced. The court observed the manner and demeanor of the parties. Although defendants are intelligent individuals and have taken some post-high school courses to better themselves, they were clearly at a disadvantage in dealing with members of the bar. It is obvious that defendants thought Powell was their attorney, looking out for their interests. Clearly, Powell was more concerned with protecting the interests of plaintiff than with protecting the rights of defendants.

It is horn book law that transactions between attorneys and clients will be sustained only when good faith and full disclosure attend such transactions. The burden of proof of the propriety of counsel's conduct is on the attorney to show that his or her conduct conformed to these standards. *Lynch v. Hook,* 298 Pa. Super. 27, 444 A.2d 157 (1982); *Leach v. Hough,* 352 Pa. Super. 213, 507 A.2d 848 (1986); *Meara v. Hewitt,* 455 Pa. 132, 314 A.2d 263 (1974).

Plaintiff cannot claim that it is entitled to an attorney's lien on defendants' property and at the same time assert that it did not represent defendants but only the corporation of which they were officers.

In an adversary situation between plaintiff and defendants, it was, at a minimum, the duty of Powell to advise defendants to retain their own counsel before coming to the meeting at which they were given two documents to sign under threat that the corporation would be left without counsel.

Certainly lawyers are entitled to be paid for their services. However, the circumstances under which these two documents were obtained violate the standard of conduct required of members of the bar. There was no valid consideration for the judgment note. The failure to inform defendants of their right to independent counsel vitiates the second agreement.

Both judgments entered in favor of plaintiff against defendants are stricken with prejudice.